UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

ABIGAIL SCHARF (formerly Farren), ELIZABETH SCHARF (formerly Farren), JOHN PELLEGRINO, GREGORY ROMAN PELLEGRINO, and MIA PELLEGRINO

Plaintiffs,

v.

KRISTIANE PELLEGRINO, Executor of THE ESTATE OF GREGORY PELLEGRINO

AND

DELOITTE & TOUCHE, LLP

Defendants.

:

Civil Action No. 1:22-cv-666 _____

**COMPLAINT**

**COMPLAINT FOR DECLARATORY JUDGMENT RELIEF**

Plaintiffs, Abigail Scharf (formerly Farren), Elizabeth Scharf (formerly Farren), John Pellegrino, Gregory Roman ("Roman") Pellegrino, and Mia Pellegrino (hereinafter "Children"), hereby file this action seeking declaratory judgment and such other relief as the Court deems appropriate, against Defendants Kristiane Pellegrino, Executor of The Estate of Gregory Pellegrino ("Executor"), and Deloitte & Touche, LLP ("Deloitte") in support therefore avers as follows:

**THE PARTIES**

1. Plaintiff Abigail Scharf resides at 625 East Main Street #102B-124 Aspen, Colorado 81611.

2. Plaintiff Elizabeth Scharf resides 625 East Main Street #102B-124 Aspen, Colorado 81611.

3. Plaintiff John Pellegrino resides at 10 Clematis Street, Dorchester, Massachusetts 02122.

4. Plaintiff Roman Pellegrino resides at 56 Valley Road Nahant, Massachusetts 01908.

5. Plaintiff Mia Pellegrino resides at 56 Valley Road Nahant, Massachusetts 01908.

6. Defendant Kristiane Pellegrino is the qualified Executor of The Estate of Gregory Pellegrino. The Estate of Gregory Pellegrino is located in the County of Loudoun, Virginia, probate file number 19509, as a result of the untimely death of Gregory Pellegrino on April 25, 2021. A copy of the Death Certificate is attached hereto as Exhibit A and the qualification of the Executor is attached as Exhibit B.

7. Defendant Kristiane Pellegrino ("Executor") resides at 36579 Mountville Road Middleburg, VA 20117

8. Defendant Deloitte & Touche, LLP ("Deloitte") is a company that maintains offices in Virginia and a registered agent in the Commonwealth of Virginia. Deliotte is an interested party in the final determination of the aid and direction of an asset that is asserted to belong to the Plaintiffs.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the suit is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10. Venue is proper in the United States District Court for the District of Virginia pursuant to § 1391 (b).

11. This Court has further subject matter jurisdiction to adjudicate a declaratory judgment action 28 U.S.C. § 2201 et. seq.

**Factual Allegations**

12. On or about June 20, 1992, Gregory Pellegrino ("Decedent") married Moira Pellegrino. As a result of their union, they had three children by the names of John Pellegrino, Roman Pellegrino, and Mia Pellegrino.

13. On or about November 4, 2011, Gregory Pellegrino and Moira Pellegrino filed for divorce, which was finalized by way of Agreement on February 13, 2013. A copy of the Agreement is attached hereto as Exhibit C.

14. Thereafter, Gregory Pellegrino began dating Mary Margaret Scharf who had two children from a previous marriage by the names of Abigail Scharf and Elizabeth Scharf (at that time all three had the surname Farren, but thereafter changed their surname to Scharf, Mary Margaret's maiden name).

15. Throughout their relationship, Gregory Pellegrino and Mary Margaret Scharf stressed the importance of family by fostering relationships with all of their respective children, which ultimately resulted in one prosperous blended family.

16. While Gregory Pellegrino was living, he qualified for a death benefit as part of his rights as a member of Deloitte LLP. Pursuant to Article 6 of the Deloitte LLP Memorandum of Agreement (the "Deloitte Agreement" attached hereto as Exhibit D) as a partner in the firm, he was entitled to a Death Benefit in the form of an annuity payable to designated beneficiaries ("Death Benefit").

17. Deloitte Agreement Section 6.11 proscribes the process for designation of beneficiaries by written notice addressed to the Chairman of the Board of Directors. *See,* Exhibit D.

18. Pursuant to the Deloitte Agreement Section 6.081 (d) and Section 6.081 (e) the Death Benefit shall be paid to the designated beneficiaries and not the Estate in the event the Designated Survivor passes prior to pay-out of the Death Benefit. *See,* Exhibit D.

19. Notably evidencing Gregory Pellegrino's awareness of the Deloitte benefits, weeks prior to his marriage to Mary Margret Scharf, Gregory Pellegrino stated in an email to Mary Margaret Scharf that he had named her as the primary beneficiary under his Death Benefit. In addition to the foregoing, several weeks earlier he had sent Mary Margaret Scharf an email requesting that she gather information for all five of the Children for purposes of Deloitte benefits. *See* October 28, 2013, and November 13, 2013, e-mails attached hereto as Exhibit E.

20. Thereafter, on or about November 23, 2013, Gregory Pellegrino married Mary Margaret Scharf.

21. On or about January 17, 2014, and only fifty-five (55) days into his marriage with Mary Margaret Scharf, Gregory Pellegrino executed a Death Benefit Designation and Form of Election Form ("Death Benefit"). A copy of the Death Benefit is attached hereto as Exhibit F. The agreement in all forms complies with Section 6.11 of the Deloitte Agreement attached hereto as Exhibit D.

22. The Death Benefit states in pertinent part: "Mary Margaret Farren (Pellegrino), Wife, if then living at the time of death of Greg Pellegrino, if not then living in *equal shares to the children of Greg Pellegrino and said wife*, as shall then be living." *See,* Exhibit F.

23. Notably, the Death Benefit named as contingent beneficiaries Gregory Pellegrino's three children from his first marriage: John Pellegrino, Roman Pellegrino and Mia Pellegrino, and Mary Margaret Scharf's children from her first marriage: Abigail Scharf and Elizabeth Scharf (formerly Farren). *See,* Exhibit F.

24. On or about June 19, 2017, Gregory Pellegrino and Mary Margaret Scharf entered into a Marital Settlement Agreement and Addendum ("Marital Settlement Agreement") setting forth rights and distribution to property as the parties sought a divorce in the District of Columbia. A copy of the Marital Settlement Agreement is attached hereto as Exhibit G.

25. In pertinent part Section 5(e) provides:

> "If either party is unable to or does not, for any reason, change the beneficiary of the death or survivor benefits of any Individual Retirement Account (IRA), or any pension, profit sharing, or other form of retirement or deferred income plan, or if either party files an election subsequent to the effective date of this Agreement, but such election is for any reason ineffective and the benefits are, in fact, paid or are payable to the other, the other shall, at the sole discretion of the decedent's personal representative, either *disclaim entitlement* or pay the net, after-tax benefits, to the beneficiary designated by the party in the otherwise ineffective election or designation. Each party acknowledges his or her understanding that the effect of this waiver and the consent by each to any election as to the form of distribution or payment, or the designation of any recipient or beneficiary, is to totally divest either party of any interest, right, benefit, or claim in, to, or under the other's retirement, profit sharing, deferred income, IRA, or any other form of retirement accounts, plans or interests."

*See,* Exhibit G p. 13 (emphasis added).

26. On or about September 15, 2018, Gregory Pellegrino married his third wife Kristiane Pellegrino.

27. Thereafter, on or about January 14, 2020, Gregory Pellegrino executed a Last Will and Testament (the "Will"). A copy of the Will is attached hereto as Exhibit H.

28. In the Will, Gregory Pellegrino named Kristiane Pellegrino as his Executor and bequeathed to the Executor the following:

> "[r]esidue, and remainder of [his] property and estate, real, personal, and mixed, tangible and intangible, of whatever nature and wherever situated, including all property [he] may acquire or become entitled to after the execution of this Will, including all lapsed legacies and devises (but excluding any property over which I may have a power of appointment, it being my intention not to exercise any such power), outright and free of trust…"

*See,* Exhibit H.

29. On April 25, 2021, Gregory Pellegrino suddenly and unexpectedly passed away.

30. Gregory Pellegrino also left Executor as the beneficiary of his Credit Shelter Trust[1]. *See,* Exhibit H.

31. Gregory Pellegrino had a life insurance policy through Deloitte in excess of six (6) million dollars. Gregory Pellegrino left over three (3) million dollars of that life insurance to Kristiane Pellegrino, as he changed the beneficiary designation on his life insurance to provide that the proceeds of the life insurance in excess of the three (3) million dollars would be payable to Kristiane Pellegrino.[2]

32. Although Gregory Pellegrino executed a new Will in 2020 to name Kristiane Pellegrino as his Executor and his sole beneficiary under such Will, and designated Kristiane Pellegrino to receive his Credit Shelter Trust, and changed his life insurance beneficiary with Deloitte to grant Kristiane Pellegrino over three (3) million dollars in life insurance proceeds, *Gregory Pellegrino, the Decedent, never changed his Deloitte Death Benefit designations. See,* Exhibit F.

33. Rather, Gregory Pellegrino left the Death Beneficiary designations unchanged. This was not an oversight. Indeed, Mr. Pellegrino suffered two near death experiences in January 2018 and February 2019; in both cases he was in intensive care for ten (10) or more days. Thereafter, although he prepared a new Will, left the Credit Shelter Trust to Kristiane Pellegrino

---

[1] Assets placed in the trust are generally held apart from the estate of the surviving spouse, so they may pass tax-free to the remaining beneficiaries at the death of the surviving spouse.

[2] Note that three (3) million dollars of the six (6) million dollar plus life insurance remained payable to Moira Pellegrino under their 2013 divorce agreement.

and changed his life insurance designations to add Kristiane Pellegrino, he never changed the Death Benefit designations.

34. The effect of this was that the Children would receive the Death Benefits because under Gregory Pellegrino's 2017 Marital Settlement Agreement with Mary Margaret she would be required to "disclaim entitlement" to those benefits (*See,* Exhibit G, Section 5(e)), which by operation of law would pass on to the remaining Children beneficiaries as if she predeceased them.

35. The fact that Gregory Pellegrino never changed the Death Benefit designations reflects the fact that but for the unchanged Death Benefit, there was nothing else left to the Children even though Gregory Pellegrino during his life was dedicated to them. To have excluded the Children altogether from any estate planning concerns would have been inconsistent with the prominent role the Children played during his life.

36. Taking all of Decedent's actions into account, in the year 2013 he added Mary Margaret's two (2) children to his benefits before their marriage, obtained the Death Benefit beneficiary designation fifty-five (55) days into their marriage with all five (5) Children as contingent beneficiaries. Subsequently, in the year 2017 when his divorce to Ms. Scharf was finalized, Decedent did not change the Death Benefit designations. Nor did the Decedent change the Death Benefit designations after his marriage to Executor in the year 2018. Following two near death experiences in 2018 and 2019, the Decedent Gregory Pellegrino created a new Will in 2020, changed designations in the Credit Shelter Trust, and changed a portion of his Deloitte life insurance designation to provide for Kristiane Pellegrino in the event of his death. Notably, Gregory Pellegrino opted to leave the Deloitte Death Benefit designations unchanged, thus continuing to provide for the Children in the event of his death.

37. On October 14, 2021, Mary Margaret Scharf disclaimed her entitlement to the Deloitte Death Benefit as required by Section 5(e) of the Martial Settlement Agreement, with the

intention that by operation of law the Death Benefit passes to the Children beneficiaries designated by the Decedent. A copy of this Disclaimer is attached hereto as Exhibit I.

38. Ms. Scharf had no choice but to "disclaim entitlement" to the benefits under Section 5(e) of the Marital Settlement Agreement. Indeed, Section 5(e) of that Agreement provided only two options which were to "disclaim entitlement" to the benefits or to "pay the net, after-tax benefits, to the beneficiary designated by the party *in the otherwise ineffective election or designation*." Of course, because there was no such "ineffective election or designation" ever attempted by Gregory Pellegrino, the only option for Ms. Scharf was to "disclaim entitlement" to the benefits, allowing them to pass to the Children.

39. By operation of law, Mary Margaret Scharf's 2021 disclaimer in adherence with the 2017 Marital Settlement Agreement and the currently effective Deloitte Death Benefit beneficiary designation provide the funds from the Death Benefit to be split in equal shares to all five (5) Children. Despite this Kristiane Pellegrino, the Executor, has asked Deloitte to not issue any funds to the Children, as she is claiming entitlement to the Death Benefits in addition to what the Decedent has separately left for her under his 2020 Will and Deloitte life insurance.

40. Executor maintains that she is entitled to the entire Death Benefit and has threatened litigation against Deloitte if it pays the Death Benefit to the Children, even though her counsel has conceded in writing that as a result of Mary Margaret's disclaimer the monies by operation of law go to the Children as if Mary Margaret predeceased them. *See,* Correspondence from John Truban dated September 8, 2021, attached hereto as Exhibit J page one.

41. As a result of the Executor's assertions, Deloitte has not issued the funds associated with the Death Benefit to the Children, the Plaintiffs in this action.

42. Declaratory judgment is necessary to guide the parties in their future conduct, including with distribution of the Deloitte Death Benefits to the Plaintiffs.

**FIRST CAUSE OF ACTION**
**ERISA DOES NOT APPLY TO DECEDENT'S DEATH BENEFIT**

43. Plaintiffs incorporate all previous paragraphs as is fully set forth herein.

44. The Death Benefit is not subject to any spousal protections provided by ERISA because the Plan is not subject to ERISA.

45. In the alternative, if it were subject to ERISA the Plan is a Top-Hat Plan exempt from ERISA's participation vesting, funding, and fiduciary requirements, as well as spousal support provisions. 29 U.S.C. §§ 1051(2), 1081(a)(3) and 1101(a)(1).

46. As such nothing in ERISA requires that the Death Benefit be paid to Kristiane Pellegrino or otherwise preempts state law.

47. Therefore, as ERISA is inapplicable to the Death Benefit, Virginia state law is controlling and applicable to the instant case.

**SECOND CAUSE OF ACTION**
**VIRGINIA LAW DICTATES THAT THE DEATH BENEFIT SHOULD BE DISTRIBUTED TO THE PLAINTIFFS**

48. Plaintiffs incorporate all previous paragraphs as is fully set forth herein.

49. Pursuant to Virginia law, Ms. Scharf should be treated as deceased for the purpose of correctly applying that the proceeds of the Death Benefit should be administered to Plaintiffs.

50. As set forth above, Section 5(e) of the Marital Settlement Agreement requires Ms. Scharf to forgo any benefits to which she may otherwise be entitled as a designee under any retirement or death benefit. *See,* Exhibit G.

51. Under Section 5(e) of the Marital Settlement Agreement, Ms. Scharf has no alternative but to "disclaim entitlement" to the benefits because there was no "ineffective election or designation" to whom the benefits could otherwise be paid.

52. Ms. Scharf has complied with this provision and issued a disclaimer as to the benefits and directed the Death Benefit be administered to the five (5) contingent beneficiaries i.e., the Plaintiffs. *See,* Exhibit I.

53. Under the Deloitte Agreement, the benefits are to be paid to the Designated Survivors elected pursuant to Section 6.11 of the Agreement. *See*, Exhibit D. Moreover, if a Designated Survivor becomes deceased, the payments are to be made to the remaining designated beneficiaries expected pursuant to Section 6.11 of the Agreement.

54. Gregory Pellegrino elected the Children to be beneficiaries under Section 6.11. *See,* Exhibit F. No such election or designation was ever made or attempted for the benefit of Kristiane Pellegrino.

55. V.A. Code § 20-111.1, provides in pertinent part that "[a] death benefit prevented from passing to a former spouse by this section shall be paid as if the former spouse had predeceased the decedent."

56. Section 5(e) of the Marital Settlement Agreement mirrors the General Assembly's intent surrounding V.A. § 20-111.1: "to bar ex-spouses from inheriting death benefits from his or her former spouse. The mechanism for accomplishing this statutory goal is to treat all former spouses as having predeceased their ex-spouse." *See, Fidelity Brokerage Services Inc.* 2018 WL 3649091 (E.D. Va., June 4, 2018).

57. Since V.A. Code § 20-111.1 necessitates that Ms. Scharf be treated as if she predeceased Mr. Pellegrino, it follows that no primary beneficiary is living and the Death Benefit should be distributed to the surviving contingent beneficiaries designated by Decedent, which is the Plaintiffs.

58.     Virginia Code § 64.2-2604(b)(3)(a) is also instructive and states in relevant part: "If the disclaimant is an individual, the disclaimed interest passes as if the disclaimant had died immediately before the time of distribution…"

59.     Whereas here, there are two distinct Virginia Statutes as well as the Deloitte Agreement that relate to the same subject matter and dictate that Ms. Scharf is to be treated as if she predeceased Mr. Pellegrino.

60.     Deloitte Agreement Section 6.081 (d) provides that the Death Benefit shall be paid to the designated beneficiaries and not the "Estate" in the case where, as here, the Decedent "designated a beneficiary or beneficiaries under Section 6.11." *See,* Exhibit D.

61.     In the instant case, employing both statutes and the Deloitte Agreement compels the conclusion that the Death Benefit shall be paid out as if Ms. Scharf predeceased Mr. Pellegrino, by its terms, the Death Benefit must pass to the Children to be equally divided between them. Even Kristiane Pellegrino's own attorney concedes this point. *See,* Exhibit K, page 1.

62.     Thus, applying the code sections -- which are analogous to Section 5(e) of the Marital Settlement Agreement -- it is required that the Death Benefit be split equally among the Children. Section 5(e) merely adopts the substance of Va. Code § 20-111.1 (a) and V.A. Code § 64.2-2604(b)(3)(a). *See also, Fidelity Brokerage Services Inc. v. Burns,* 2018 WL 3649091 (E.D. Va., June 4, 2018).

63.     The Children are entitled to the Death Benefit as if Ms. Scharf predeceased them.

64.     For the foregoing reasons, the Children are entitled to the funds from the Death Benefit.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully requests that this Honorable Court interpret the Deloitte Death Benefit and other related documents including the Marital Settlement Agreement and the applicable law that will apply to this case and direct the Parties as to the proper direction of payment as it relates to the Deloitte Death Benefit.

Respectfully submitted,

/s/ *Christopher J. Wiemken*
Christopher J. Wiemken, Esq.
Clarke, Dolph, Hull & Brunick, PLC
5712 Cleveland Street, Suite 130
Virginia Beach, VA 23462
757.466.0464
cwiemken@clarkedolph.com

/s/ *Ari Karen*
Ari Karen, Esq. (*pro hac vice forthcoming*)
Rachel S. Trauner, Esq. (*pro hac vice forthcoming*)
Mitchell Sandler
1120 20th Street, NW, Suite 725
Washington, DC 20036
202.886.5267
akaren@mitchellsandler.com
rtrauner@mitchellsandler.com

***Attorneys for Plaintiffs***