UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| ABIGAIL SCHARF, ELIZABETH SCHARF, JOHN PELLEGRINO, GREGORY ROMAN PELLEGRINO and MIA PELLEGRINO,<br><br>   Plaintiffs,<br><br>       v.<br><br>KRISTIANE PELLEGRINO, EXECUTOR OF THE ESTATE OF GREGORY PELLEGRINO and DELOITTE, LLP,<br><br>   Defendants. | Civil Action No. 1:22-cv-00666 |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR ATTORNEY FEES**

    Plaintiffs, Abigail Scharf, Elizabeth Scharf, John Pellegrino, Gregory Roman Pellegrino, and Mia Pellegrino (collectively "Plaintiffs" or the "Scharf-Pellegrino Children"), by and through undersigned counsel, and pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure, hereby file this Memorandum of Law in support of their Motion for Attorney's Fees and as support state as follows:

**INTRODUCTION**

    This case arises from a dispute concerning the proper beneficiaries to receive a death benefit policy (the "Benefit") stemming from the late Gregory Pellegrino's employment with Deloitte LLP ("Deloitte"). Defendant Kristiane Pellegrino ("Defendant"), acting as Executor of the Estate of Gregory Pellegrino (the "Estate") objected to Mary Margaret Farren's ("Ms. Farren") disclaimer of the Benefit pursuant to the Marital Settlement Agreement. Defendant objected to Ms. Farren's disclaiming of the benefit, asserting that the Marital Settlement Agreement ("MSA")

required Ms. Farren to designate the Estate as the beneficiary of the Benefit. *See* Dck. 42-7 at 2–3; 42-8 at 2. Defendant threatened litigation "to enforce compliance of the MSA" if the Benefit was distributed otherwise and specifically threatened to seek attorney's fees pursuant to the MSA. Dck. 42-8 at 3.

As a result, Plaintiffs – who are Mr. Pellegrino's and Ms. Farren's heirs -- were required to file the present lawsuit to enforce Ms. Farren's disclaimer of the Benefit pursuant to the MSA, which would allow the Benefit to flow to Plaintiffs as the designated beneficiaries. *Id.* at 2. Plaintiffs were forced to file this declaratory judgment action to enforce Ms. Farren's disclaimer of the Benefit under the MSA, despite Defendant's insistence that she assign the Benefits to the Estate. Indeed, Plaintiffs, having successfully enforced the proper disclaimer of the Benefit, are now entitled to reasonable attorney's fees pursuant to the MSA.

## **FACTUAL BACKGROUND**

In April of 2021, Gregory Pellegrino ("Mr. Pellegrino"), a successful partner at Deloitte, tragically died in a car accident. Dck. 57 at 1; Dck. 8-3. Mr. Pellegrino had previously been married to Ms. Farren[1] and they were divorced in 2017. *Id.* at 2. As a part of the divorce, Mr. Pellegrino and Ms. Farren entered into the MSA. *Id.;* see Dck. 42-6 (MSA). The MSA provides: "Any reasonable expenses, including but not limited to counsel fees, expert fees, and court costs incurred by a party in the successful enforcement of any of the provisions of this Agreement, whether through litigation or other action necessary to compel compliance herewith, shall be borne by the defaulting party." *See* Ex. A at 13(b). Section 26 of the MSA provides that "This Agreement shall be binding upon the parties, their heirs, administrators, executors and assigns." *Id.* at 26. As stated

---

[1] Ms. Farren is alternatively referred to as Ms. Mary Margaret Scharf in some of the relevant correspondence. To avoid confusion, she is referenced herein only as Ms. Farren.

2

in Section 31, the MSA "shall be governed by and construed in accordance with the laws of the District of Columbia." *Id.* at 31.

At the time of Mr. Pellegrino's death, the Benefit named Ms. Farren as the primary beneficiary and named the Scharf-Pellegrino Children as continent beneficiaries- enabling them to collect under the Benefit if Ms. Farren were to predecease Mr. Pellegrino. *Id.* The MSA provided in relevant part that in the event that Mr. Pellegrino dies and Ms, Farren remained a Beneficiary, she would either disclaim the Benefit or, pay the designated beneficiary if an ineffective change to the beneficiary had been submitted by Mr. Pellegrino. Dck. 42-6 at Section 5. Notwithstanding the foregoing, after Mr. Pellegrino's death, Defendant – who was appointed as executor of Mr. Pellegrino's Estate[2] – took the position that under the MSA Ms. Farren had to assign the Benefit to the Estate. Dck. 42-7 at 2. On or about September 8, 2021, counsel for Defendant sent a letter to Ms. Farren demanding that she assign to the Estate of Mr. Pellegrino "the right to the entire death benefit under the beneficiary designation in the death benefit plan of Deloitte." Id. Counsel stated that a "disclaimer would not work in this case" and instructed Ms. Farren that she was required to assign her interests in the Benefit to the Estate. *Id.* On or about September 14, 2021, counsel for Defendant sent follow-up correspondence, which stated, in relevant part:

> The MSA, dated June 19, 2017 is straightforward concerning the disposition of certain assets and interests each party received as part of the overall agreement. It was expressly understood and agreed that Ms. [Farren] relinquished, gave up, waived, and promised to transfer any rights (to the decedent's personal representative) to any claim of death benefits, IRA, profit sharing, and/or retirement or deferred income plan, regardless if Greg Pellegrino did not, for any reason, change the designation of beneficiary to the same. **In the event that either party failed to relinquish rights, then the other party would be entitled to enforce Paragraph 5(c) of the MSA through litigation and seek all reasonable costs,**

---

[2] It is undisputed that Defendant Kristiane Pellegrino is the qualified Executor of the Estate of Gregory Pellegrino (Probate File No. 19509). *See* 8-2.

> **including attorney's fees**. Finally, the MSA mandates that the agreement is to be governed and construed in accordance with D.C. laws.
>
> More than sufficient time has been provided to review Ms. [Farren]'s obligations under the MSA and to review the proposed assignment of benefits to the Estate of Gregory Pellegrino. Please let me know no later than close of business on September 21, 2021 if Ms. [Farren] will cooperate and sign the previously proposed assignment, which I have enclosed once again for your convenience. **If I do not receive confirmation from you that Ms. [Farren] agrees to cooperate, or there is continued silence and delay on Ms. [Farren's] end, then the Estate of Gregory Pellegrino will commence legal action to enforce compliance of the MSA and seek all reasonable attorney's fees, costs, interest and other applicable damages including the value of the benefit itself.**

*See* Dck. 42-8 at 2–3 (emphasis added).

Though Defendant never filed the threatened action, she did raise her objections to Deloitte, which was in no position to determine the rightful recipient of the Benefit. Dck. 42-7 at 2. Although Ms. Farren disclaimed the Benefit on October 14, 2021 and transmitted the disclaimer to Defendant's counsel, Defendant continued to insist that Ms. Farren's disclaimer did not entitle the Children to the Benefit. *Id.*; 42-8 at 2. Rather, Defendant maintained her position that Ms. Farren was required to assign the benefit to the Estate under the MSA effectively blocking Plaintiffs from receiving the Benefit. Dck 42-7 at 2-3. Since Deloitte had no right to resolve this dispute on its own, it could not pay the Benefit to either party. Plaintiffs were therefore forced to file the present declaratory judgment action to enforce Ms. Farren's ability to disclaim the Benefit under the MSA, to enable their ultimate receipt of the Benefit. Dck. 1.

On December 6, 2022, Plaintiffs filed a Motion for Summary Judgment (Dck. No. 41), which was opposed by Defendant on January 6, 2022 (Dck. No. 48). On July 18, 2023, this Court issued a Memorandum Order and Opinion granting Plaintiffs' Motion for Summary Judgment and disposing of all claims. (Dck. No. 57 at 4). The Court found that "because Ms. Farren's disclaimer (and her resulting 'death') triggered the contingency written into the Benefit's terms – Plaintiffs

4

are entitled to the funds at issue." Dck. No. 57 at 4. On August 28, 2023, the judgment granting summary judgment in favor of Plaintiffs was entered as a separate document and Deloitte LLP was ordered to distribute the Death Benefit to the Scharf-Pellegrino Children. Dck. 60.

## **LEGAL STANDARD**

Rule 54(d)(2) provides that:

(A) *Claim to Be by Motion*. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

(B) *Timing and Contents of the Motion*. Unless a statute or a court order provides otherwise, the motion must:

    (i) be filed no later than 14 days after the entry of judgment;

    (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

    (iii) state the amount sought or provide a fair estimate of it; and

    (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

When a contractual agreement "provides for an award of fees to the prevailing party, that party bears the burden of establishing that the attorney's fees it seeks "are reasonable in relation to the results obtained and were necessary." *Zoroastrian Center and Darb-E-Mehr of Metropolitan Washington, D.C. v. Rustam Guiv Foundation*, 245 F.Supp.3d 742, 745 (E.D. Va. 2017) (quoting *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 624 (Va. 1998)).

**ARGUMENT**

**1. The Motion for Attorney's Fees is Timely.**

As an initial note, Plaintiffs' Motion for Attorney's Fees is timely filed. Pursuant to Federal Rule of Civil Procedure 54(d)(2), a motion for attorney's fees must be filed within 14 days after the entry of judgment. Under Rule 58(a) of the Federal Rules of Civil Procedure, "[e]very judgment and amended judgment must be set out in a separate document" and entered on the docket separate from the accompanying opinion. *Hughes v. Halifax County School Bd.*, 823 F.2d 832, 834 (4th Cir. 1987).

The judgment in favor of Plaintiffs was entered as a separate document on the docket on August 28, 2023, and the present motion was filed within 14 days after this entry judgment. *See* Dck. Nos. 60 and 61. As such, Plaintiffs' Motion for Attorney's Fees has been timely filed. *See CX Reinsurance Company Limited v. Johnson*, 977 F.3d 306, 313 (4th Cir. 2020) (holding that motion for attorney's fees under Rule 54(d)(2) was timely where filed within 14 days of entry of judgment). For these reasons, there can be no doubt that Plaintiffs' Motion for Attorney's Fees has been timely filed.

**2. The Parties are Bound by the Marital Settlement Agreement**.

The contractual language of the MSA is clear that it binds the Parties as the heirs and executors of the original contracting parties. In interpreting a contract under the law of the District of Columbia, "[t[he guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declare." *KnowledgePlex, Inc. v. Metonymy, Inc.*, 574 F.Supp.2d 164, 171 (D.D.C. 2008) (quoting *Quadros & Assocs., P.C. v. City of Hampton*, 268 Va. 50, 54 (Va. 2004) (internal citations omitted)).

Here, it is clear from the language of the MSA that it was not only meant to be enforceable by Mr. Pellegrino and Ms. Farren, but also that it "shall be binding upon the parties, their heirs, administrators, executors and assigns." Dck.42-6 at 23. It is undisputed that the Scharf-Pellegrino Children are the heirs of Mr. Pellegrino and/or Ms. Farren, thus the MSA is binding on them. Likewise, it is undisputed that Defendant is the executor of the Estate (*supra* n. 3) and, as such, is bound by the MSA.

Moreover, Plaintiffs are third-party beneficiaries to the MSA. Under D.C. law, "[t]hird-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly' the party urged to be a third-party beneficiary.'" *Oehme, Van Sweden & Associates, Inc. v. Maypaul Trading & Services Ltd.*, 902 F.Supp.2d 87, 100 (D.D.C. 2012) (quoting *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008)). Third-party beneficiary theory "looks to the parties' intentions at the time the contract was executed." *Id.* (internal citation omitted). Here, the language of the MSA expressly states that it shall be binding on the heirs of Mr. Pellegrino and Ms. Farren. Dck. 42-6 at 23. Moreover, the inclusion of this language demonstrates that the original contracting parties intended on making the MSA enforceable by third-party beneficiaries. *See Kennedy v. Hill*, 262 F.2d 26, 26–27 (D.C. 1958) (affirming the enforcement of a marital settlement agreement between a former spouse and the executor of the estate of the deceased husband).  Here, the provisions relevant to this dispute were directly intended to ensure that Mr. Pellegrino's designated beneficiaries received the Benefit.  As such, the Parties at issue are bound by and entitled to enforce the terms of the MSA.

### 3. The Marital Settlement Agreement Authorizes Attorney's Fees in this Action.

Plaintiffs are entitled to reasonable attorney's fees in this action because they were forced to initiate this action in order to enforce Ms. Farren's disclaimer of the Benefit under the MSA.

Attorney's fees are authorized pursuant to Section 13(b) of the MSA, which provides that "reasonable expenses, including but not limited to counsel fees, expert fees, and court costs" shall be awarded to a party who successfully enforces and/or defends against the assertion of the MSA in any action. Dck. 42-6 at 20–21. It is well-established that the District of Columbia follows the American Rule[3], under which attorney's fees are recoverable by a prevailing litigant from the losing litigant "only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions." *Pajic v. Foote Properties, LLC*, 72 A.3d 140, 145 n. 6 (D.C. 2013) (quoting *Nest & Totah Venture, LLC v. Deutsch*, 31 A.3d 1211, 1229 (D.C. 2011) (quoting *Psaromatis v. English Holdings I, L.L.C.*, 944 A.2d 472, 490 (D.C. 2008))). District of Columbia law is clear that a marital settlement agreement "is a contract, subject to the same law governing other contracts." *Duffy v. Duffy*, 881 A.2d 630, 633 (D.C. 2005) (citing *Owen v. Owen*, 427 A.2d 933, 937 (D.C. 1981) (*Lanahan v. Nevius*, 317 A.2d 521, 522 (D.C. 1974))). "In the absence of fraud, duress, concealment or overreaching, a separation agreement is presumptively valid and binding no matter how ill-advised a party may have been in executing it." *Duffy*, 881 A.2d at 633 (citing *Reynolds v. Reynolds*, 415 A.2d 535, 537 (D.C. 198)) (*Le Bert-Francis Le Bert-Francis*, 194 A.2d 662, 664 (D.C. 1963) (ruling that a rebuttable presumption of validity exists where an agreement is fair on its face).

The present declaratory judgment action was initiated in order to enforce Ms. Farren's ability to disclaim her interest in the Benefit under the MSA. The dispute was created and necessitated by Defendant's improper insistence that under the terms of the MSA she could require Ms. Farren to assign the Benefit to the Estate. Plaintiffs attempted to resolve the dispute shy of

---

[3] As stated above, the MSA is to be governed and construed under the law of the District of Columbia. *See* Ex. Dck. 42-6 at 25 (Section 31).

litigation by sending a proposed disclaimer to counsel for Defendant. However, Defendant refused to accept the disclaimer, literally admitting that if they accepted it the Benefits would flow to Plaintiffs – Mr. Pellegrino's designated beneficiaries. *See* Dck. 42-7 at 2–3[4] , 42-8 at 2. Instead, Defendant demanded the assignment of the Benefit under the terms of the MSA, threatening to seek attorney's fees under the MSA if Ms. Farren did not comply. Dck. 42-8 at 3.

As such, the present circumstances are exactly what was contemplated in the MSA that "a party in the successful enforcement of any of the provisions of this Agreement, whether through litigation or other action necessary to compel compliance herewith" be awarded any reasonable expenses. Dck. 42-6 at 19. Because Plaintiffs were forced to file this lawsuit to enforce Ms. Farren's ability to disclaim the Benefit and the effective implications thereof, under the MSA Plaintiffs should be awarded attorney's fees.

For these reasons, the MSA authorizes the award of reasonable attorney's fees to Plaintiffs, as the prevailing party in this action.

**4. The Requested Attorney's Fees are Reasonable.**

The attorney's fees requested herein are fair and reasonable. When "deciding whether a party has shown the reasonableness of the fees, the fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were

---

[4] In Defendant's September 8, 2021 letter, counsel wrote "The problem with the disclaimer in this case is that the beneficiary designation states that if Mary Margaret dies, there are five alternate beneficiaries, her two children and Greg's three children. The disclaimer would be interpreted under Virginia law, the state in which Greg's estate is being administered, and under Virginia law, in the disclaimer statute, anything disclaimed cannot pass by direction in any other way than what would happen if nothing was done except the disclaimant had predeceased the decedent. So, under Virginia law, if Mary Margaret is treated as having predeceased Greg, then it would appear to pass under the beneficiary designation to the alternate named beneficiaries, which are the five children."

consistent with those generally charged for similar services, and whether the services were necessary and appropriate." *HeiTech Services, Inc. v. Front Rowe, Inc.*, 2015 WL 3936451, *2 (E.D. Va. June 25, 2015) (quoting *West Square, LLC v. Commc'n Techs., Inc.*, 649 S.E.2d 698, 702 (Va. 2007)).[5]

In the present case, the attorney's fees expended were fair and reasonable. In total, 209.10 hours amounting to $120,954.00 in attorney's fees were expended during this matter. *See* Declaration of Ari Karen, attached hereto as **Exhibit A**; Timesheets, attached as **Exhibit B**. The time and labor expended was reasonable in this case because of the complicated nature of the legal issues involved and the significant litigation involved, which included mediation, written discovery, and dispositive motions at both the dismissal and summary judgment phases. *Id.* at ¶ 3. Moreover, this case involved novel and complicated issues of law that required researching and analyzing novel choice of law issues as well as the substantive analysis of laws in Delaware, Virginia, and Washington, D.C. intersecting issues pertaining to contracts law, estates law, and ERISA. *Id.* Moreover, the hourly rates in this are matter are reasonable in light of the novel and complicated nature of the legal issues, and are comparable to prevailing market rates for attorneys practicing in the Eastern District. Ex. A at ¶ 10. The following rates were charged in this matter: $680-$765/hour- Ari Karen (partner- 20+ years' experience); $560/hour- Rachel Trauner (senior associate- 4+ years' experience); $495/hour- Sean Harding (associate- 4+ years' experience); $225/hour- Nick Helsabeck-Ochoa (paralegal); $200/hour- Karen Lindsey (paralegal). *Id.* at ¶ 4. These rates are comparable to rates which have found to be reasonable by the U.S. District for the Eastern District of Virginia. *See BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.*, 234

---

[5] This is similar to the "lodestar analysis" used by the Fourth Circuit for cases involving federal questions. *Id.* (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009).

F.Supp.3d 760, 771–772 (E.D. Va. 2017) (citing *Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10-cv-502, Dkt. 263 (E.D. Va Aug. 24, 2011) (which approved the following rates in Eastern Virginia: $505-820 for attorney with 20+ years of experience, $350-600 for attorney with at least 4 years experience, and $130-$250 for paralegals). As such, it is clear that the rates assessed in this matter were comparable to prevailing market rates in the community for similar services.

Finally, Plaintiffs were required to file the instant action due to the actions of Defendant Kristianne Pelegrino, who objected to Ms. Farren's disclaimer of the Benefit and subsequent distribution to Plaintiffs. Ex. A at ¶ 12. This case involved a large death benefit likely worth several million dollars. Without the filing of the instant action, it is likely that Plaintiffs would not have received the Benefit. As the Plaintiffs have now prevailed on all claims in this matter, it is clear that the services rendered were necessary and appropriate. *Id.*

For these reasons, Plaintiffs have met their burden to demonstrate that the attorney's fees accrued and requested hourly rates were reasonable.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant its motion for attorney's fees and award reasonable attorney's fees to Plaintiffs.

Dated: September 11, 2023

                                           Respectfully submitted,

                                           */s/ Christopher J. Wiemken*
                                           Christopher J. Wiemken, Esq.
                                           CLARKE, DOLPH, HULL & BRUNICK, PLC
                                           5712 Cleveland Street, Suite 130
                                           Virginia Beach, VA 23462
                                           CWiemken@clarkedolph.com

                                           */s/ Ari Karen*
                                           Ari Karen, Esq.

          MITCHELL SANDLER, LLC
          1120 20th Street, NW, Suite 725
          Washington, D.C. 20036
          Telephone: (202) 886-5267
          akaren@mitchellsandler.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 11th day of September, 2023, in accordance with the Federal Rules of Civil Procedure, the foregoing was served by electronic mail and/or the Court's CM/ECF system on the following counsel of record:

Brad D. Weiss
Travis F. Salisbury
Mahdavi, Bacon, Halfhill & Young, PLLC
11350 Random Hills Rd., Ste. 700
Fairfax, VA 22030
(703) 352-1300 (office)
(703) 352-1301 (fax)
BWeiss@mbhylaw.com
TSalisbury@mbhylaw.com

***Counsel for Defendants***

                                                  */s/ Christopher J. Wiemken*
                                                  Christopher J. Wiemken, Esq.